UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN K. GRELLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-00766 |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER AND COUNTERCLAIM

NOW COMES Defendant/Counterclaim National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), and, by and through its undersigned attorneys, submits herewith its Answer to the Complaint of Plaintiff/Counterclaim Defendant John K. Grelle ("Grelle") and asserts its Counterclaim as follows:

## ANSWER

### Parties, Jurisdiction and Venue

1.  National Union is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 1.

2.  National Union admits the allegations contained in paragraph 2.

3.  National Union admits the allegations contained in paragraph 3.

4.  National Union admits that jurisdiction is proper in this Court pursuant to 28 U.S.C. § 2201 and 2202, but denies the remaining allegations contained in paragraph 4.

5.  National Union admits the allegations contained in paragraph 5.

**Underlying Facts**

6.      Upon information and belief, National Union admits the allegations contained in paragraph 6.

7.      Upon information and belief, National Union admits that Ullico employed Grelle as its Senior Vice President and Chief Financial Officer from January 1996 to February 25, 2003. National Union denies the remaining allegations contained in paragraph 7, specifically including the allegation that Grelle ever served as Ullico's Chief Legal Officer.

8.      National Union denies the allegations contained in paragraph 8.

**The Carabillo Litigation and Counterclaims**

**Carabillo I**

9.      National Union admits that Ullico employed Carabillo as Vice President and Chief Legal Officer beginning on March 2, 1987 but denies the remaining allegations contained in paragraph 10.  National Union affirmatively states that Carabillo was terminated for cause by Ullico on May 31, 2003.

10.      National Union admits that Carabillo filed Civil Action No. 1:03CV01556 in the United States District Court for the District of Columbia on July 18, 2003.  To the extent Grelle alleges statements contained in that complaint, no response is required because the language of the pleading speaks for itself.  The remaining allegations contained in paragraph 10 are denied.

11.      National Union admits that attached to the Complaint as "Ex. 1" is a copy of the Amended Answer and Counterclaim filed by Ullico and related parties on October 17, 2003.  To the extent paragraph 11 alleges statements contained in that complaint, no response is required because the language of the pleading speaks for itself.  The remaining allegations in paragraph 11 are denied.

12.     To the extent paragraph 12 alleges statements contained in Ullico's Amended Answer and Counterclaim, no response is required because the language of the pleading speaks for itself.  The remaining allegations in paragraph 12 are denied.

13.     National Union admits that attached to the Complaint as "Ex. 2" is a copy of the Answer, Affirmative Defenses, Counterclaims and Cross-Claim filed by Grelle on November 18, 2003.  To the extent paragraph 13 alleges statements contained in that pleading, no response is required because the language of the pleading speaks for itself.

**Carabillo II**

14.     National Union admits that Carabillo filed Civil Action No. 1:04CV00776 in the United States District Court for the District of Columbia on July 18, 2003.  To the extent paragraph 14 alleges statements contained in that complaint, no response is required because the language of the pleading speaks for itself.

15.     National Union admits that attached to the Complaint as "Ex. 3" is a copy of the Answer and Counterclaims filed by Ullico and related parties on July 26, 2004.  To the extent paragraph 15 alleges statements contained in that pleading, no response is required because the language of the pleading speaks for itself.

16.     National Union is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 16 and therefore denies same.

**The National Union Insurance Policies**

**The Directors and Officers Insurance Policies**

17.     National Union admits that it issued Directors and Officers Policy No. 495-36-84 to Ullico.  To the extent paragraph 17 contains allegations of statements contained in that policy,

no response is required because the language of the policy speaks for itself. National Union clarifies that Policy No. 495-36-84's policy period is October 30, 2002 to October 30, 2003.

18.    National Union admits that it issued Directors and Officers Policy No. 299-96-17 to Ullico, but specifically denies that such policy has a policy period of July 19, 2002 – July 19, 2003. The correct policy period of Policy No. 299-96-17 is July 19, 2003 – July 19, 2004. To the extent paragraph 18 contains allegations of statements contained in that policy, no response is required because the language of the policy speaks for itself.

19.    To the extent paragraph 19 contains allegations of statements contained in the Directors and Officers Policy, no response is required because the language of that policy speaks for itself.

20.    To the extent the second paragraph numbered "18"[1] contains allegations of statements contained in the Directors and Officers Policy, no response is required because the language of that policy speaks for itself.

21.    To the extent the second paragraph numbered "19" contains allegations of statements contained in the Directors and Officers Policy, no response is required because the language of that policy speaks for itself.

22.    To the extent the third paragraph numbered "19" contains allegations of statements contained in the Directors and Officers Policy, no response is required because the language of that policy speaks for itself.

---

[1] The paragraphs in Grelle's Complaint are mis-numbered beginning after paragraph 19. As such, the Complaint contains two paragraphs numbered "18" and three paragraphs numbered "20".

**Employee Benefit Plan Fiduciary Liability**
**Insurance Policies 548-03-72, 874-44-03 and 495-38-35**

**The 2003 Policy – Policy Number 548-03-72**

23.    National Union admits that it issued to Ullico an "Employee Benefit Fiduciary Liability Policy" No. 548-03-72 with a policy period of October 30, 2003 to October 30, 2004. National Union specifically denies that the policy number of such policy is 495-38-35.  To the extent paragraph 20 contains statements contained in Policy No. 548-03-72, no response is required because the language of that policy speaks for itself.

24.    To the extent paragraph 21 alleges statements contained in the 2003 Policy, no response is required because the language of that policy speaks for itself.  National Union denies the remaining allegations contained in paragraph 21.

25.    To the extent paragraph 22 alleges statements contained in the 2003 Policy, no response is required because the language of that policy speaks for itself.

26.    To the extent paragraph 23 alleges statements contained in the 2003 Policy, no response is required because the language of that policy speaks for itself.

27.    To the extent paragraph 24 alleges statements contained in the 2003 Policy, no response is required because the language of that policy speaks for itself.

28.    To the extent paragraph 25 alleges statements contained in the 2003 Policy, no response is required because the language of that policy speaks for itself.  National Union denies the remaining allegations in paragraph 25.

29.    To the extent paragraph 26 alleges statements contained in the 2003 Policy, no response is required because the language of that policy speaks for itself.

**The 2002 Policy – Policy Number 495-38-35**

30.     National Union admits that it issued to Ullico an Employee Benefit Fiduciary Liability Policy No. 495-38-35, with a policy period of October 30, 2002 to October 30, 2003. To the extent paragraph 27 alleges statements contained in Policy No. 495-38-35, no response is required because the language in that policy speaks for itself.

31.     To the extent paragraph 28 alleges statements contained in the 2002 Policy, no response is required because the language of that policy speaks for itself.

32.     To the extent paragraph 29 alleges statements contained in the 2002 Policy, no response is required because the language of that policy speaks for itself.  National Union denies the remaining allegations contained in paragraph 29.

33.     To the extent paragraph 30 alleges statements contained in the 2002 Policy, no response is required because the language of that policy speaks for itself.

34.     To the extent paragraph 31 alleges statements contained in the 2002 Policy, no response is required because the language of that policy speaks for itself.  The remaining allegations contained in paragraph 31 are denied.

35.     To the extent paragraph 32 alleges statements contained in the 2002 Policy, no response is required because the language of that policy speaks for itself.

36.     To the extent paragraph 33 alleges statements contained in the 2002 Policy, no response is required because the language of that policy speaks for itself.

**The 2001 Policy – Policy Number 874-44-03**

37.     National Union admits that it issued to Ullico an Employee Benefit Fiduciary Liability Policy No. 874-44-03, with a policy period of October 30, 2001 to October 30, 2002.

To the extent paragraph 34 contains allegations of statements contained in Policy No. 874-44-03, no response is required because the language of that policy speaks for itself.

38.    To the extent paragraph 35 alleges statements contained in the 2001 Policy, no response is required because the language of that policy speaks for itself.  The remaining allegations contained in paragraph 35 are denied.

39.    To the extent paragraph 36 alleges statements contained in the 2001 Policy, no response is required because the language of that policy speaks for itself.

40.    To the extent paragraph 37 alleges statements contained in the 2001 Policy, no response is required because the language of that policy speaks for itself.

41.    To the extent paragraph 38 alleges statements contained in the 2001 Policy, no response is required because the language of that policy speaks for itself.  The remaining allegations contained in paragraph 38 are denied.

42.    To the extent paragraph 39 alleges statements contained in the 2001 Policy, no response is required because the language of that policy speaks for itself.

43.    To the extent paragraph 40 alleges statements contained in the 2001 Policy no response is required because the language of that policy speaks for itself.

44.    The allegations in paragraph 41 require no response.

45.    National Union admits the allegations contained in paragraph 42.

### The Demands for Coverage

46.    National Union admits that attached to the Complaint as "Ex. 8" is a letter dated April 13, 2004 and addressed to National Union, among others.  To the extent paragraph 43 alleges statements contained in that letter, no response is required because the language in that letter speaks for itself.

47.     National Union admits that attached to the Complaint as "Ex. 9" is a letter dated April 30, 2004 sent on behalf of National Union to counsel for Grelle.  To the extent paragraph 44 alleges statements contained in that letter, no response is required because the language in that letter speaks for itself.

48.     To the extent paragraph 45 alleges statements contained in the April 30, 2004 letter, no response is required because the language in that letter speaks for itself.  The remaining allegations contained in paragraph 45 are denied.

49.     National Union denies the allegations contained in paragraph 46.

50.     National Union admits that attached to the Complaint as "Ex. 10" is a letter dated August 18, 2004 and addressed to National Union.  To the extent paragraph 47 alleges statements contained in that letter, no response is required because the language of that letter speaks for itself.

51.     National Union admits that attached to the Complaint as "Ex. 11" is a letter dated October 29, 2004 sent on behalf of National Union to Allison Eisenberg of Frank Crystal & Company.  However, National Union specifically denies that the handwritten language in the left margin of page 4 of that letter was prepared by or on behalf of National Union, and further denies that such handwritten language appeared on the copy sent to Ms. Eisenberg on behalf of National Union.  To the extent paragraph 48 alleges statements contained in that letter, no response is required because the language of that letter speaks for itself.

52.     To the extent paragraph 49 alleges statements contained in the October 29, 2004 letter, no response is required because the language in that letter speaks for itself.  The remaining allegations contained in paragraph 49 are denied.

53.     National Union admits that attached to the Complaint as "Ex. 12" is a letter dated November 29, 2004 sent on behalf of National Union to Allison Eisenberg of Frank Crystal & Company.  To the extent paragraph 50 alleges statements contained in that letter, no response is required because the language in that letter speaks for itself.

54.     National Union denies the allegations contained in paragraph 51.

55.     National Union admits that attached to the Complaint as "Ex. 13" is a letter dated December 14, 2004 sent on behalf of National Union to Allison Eisenberg of Frank Crystal & Company.  To the extent paragraph 52 alleges statements contained in that letter, no response is required because the language in that letter speaks for itself.

56.     National Union denies the allegations contained in paragraph 53.

57.     National Union denies the allegations contained in paragraph 54.

58.     National Union denies the allegations contained in paragraph 55.

59.     National Union denies the allegations contained in paragraph 56.

60.     National Union denies the allegations contained in paragraph 57.

61.     National Union denies the allegations contained in paragraph 58.

62.     National Union admits that it has made coverage determinations for Grelle under applicable National Union policies, but denies the remaining allegations contained in paragraph 59.

63.     National Union denies the allegations contained in paragraph 60.

64.     National denies the allegations contained in paragraph 61.

65.     National Union denies the allegations contained in paragraph 62.

66.     National Union admits the allegations contained in paragraph 63.

## COUNT I – BREACH OF CONTRACT

67.     National Union reasserts and incorporates herein its responses to the allegations contained in all preceding paragraphs.

68.     National Union denies the allegations contained in paragraph 65.

69.     National Union denies the allegations contained in paragraph 66.

70.     National Union denies the allegations contained in paragraph 67.

## COUNT II – DECLARATORY JUDGMENT

71.     National Union reasserts and incorporates herein its responses to the allegations contained in all preceding paragraphs.

72.     National Union denies the allegations contained in paragraph 69.

73.     The allegations contained in paragraph 70 are unclear, making it impossible to respond, and are therefore denied.

74.     National Union denies the allegations contained in paragraph 71.

## COUNT III – BAD FAITH

75.     National Union denies the allegations contained in paragraph 72.

76.     National Union denies the allegations contained in paragraph 73.

77.     National Union denies the allegations contained in paragraph 74.

78.     National Union denies the allegations contained in paragraph 75.

79.     National Union denies each and every allegation contained in the Complaint not hereinbefore specifically admitted, controverted or denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint, including each and every purported cause of action, fails to state a cause of action upon which relief may be granted against National Union.

### SECOND AFFIRMATIVE DEFENSE

The Complaint should be dismissed for failure to join necessary and indispensable parties to this proceeding.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the offset of any of Plaintiff's other applicable insurance policies.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the "insured v. insured" policy exclusions contained in Clause 4(i) National Union Policy Nos. 299-96-17 and 495-36-84, as amended and as supplemented, which exclusionary provisions preclude coverage for the underlying action counterclaims asserted against Grelle.

### SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by certain exclusions and policy provisions in National Union Policy Nos. 299-96-17 and 495-36-84, as amended, including, but not limited to, the exclusion contained in Clause 4(o), which exclusionary provisions preclude coverage for some or all of the claims asserted against Grelle.

## SEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by certain exclusions and policy provisions in National Union Policy Nos. 299-96-17 and 495-36-84 including, but not limited to, the exclusions contained in Clause 4(a), which exclusionary provisions preclude coverage for some or all of the claims asserted against Grelle.

## EIGHTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by certain exclusions and policy provisions in National Union Policy Nos. 299-96-17 and 495-36-84 including, but not limited to, the exclusions contained in Clause 4(c), which exclusionary provisions preclude coverage for some or all of the claims asserted against Grelle.

## NINTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by certain exclusions and policy provisions in National Union Policy Nos. 299-96-17 and 495-36-84 including, but not limited to, the exclusions contained in Clause 4(d), which exclusionary provisions preclude coverage for some or all of the claims asserted against Grelle.

## TENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by certain exclusions and policy provisions in National Union Policy Nos. 299-96-17 and 495-36-84 including, but not limited to, the exclusions contained in Clause 4(e), which exclusionary provisions preclude coverage for some or all of the claims asserted against Grelle.

## ELEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by certain exclusions and policy provisions in the 2002 Fiduciary Policy and 2003 Fiduciary Policy including, but not limited to, Clause 5(d) of those policies, which preclude coverage for the claims asserted against Grelle.

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the exclusion contained in Endorsement #12 to the 2003 Fiduciary Policy, which precludes coverage for the claims asserted against Grelle.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the "no action" provisions contained in Clause 17 of the 2001, 2002 and 2003 Fiduciary Policies, and Clause 18 of the Directors and Officers Policies.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent discovery may reveal them to be appropriate, National Union reserves the right to pursue the defenses of waiver, applicable statutes of limitations, estoppel, laches, release, accord and satisfaction, and statute of frauds.

## COUNTERCLAIM

1.    Counterclaim Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") asserts the following counterclaim against Plaintiff/Counterclaim Defendant John K. Grelle ("Grelle"), seeking a declaratory judgment that Grelle is not entitled to coverage for the claims asserted against it in the collateral civil litigation with Ullico under any of the 2002 Fiduciary, 2003 Fiduciary or the Directors and Officers Policies issued to Ullico by National Union.

**Jurisdiction and Venue**

2.      This Court has jurisdiction pursuant to Fed. R. Civ. P. 13, 28 U.S.C. § 1332(a) and 28 U.S.C. §§ 2201, 2202.  The amount in controversy exceeds, exclusive of interests and costs, the sum of $75,000.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that the policies at issue were negotiated and a substantial part of the events giving rise to the claim occurred in the District of Columbia.

**Parties**

4.      Counterclaim Plaintiff National Union is a corporation incorporated under the laws of the State of Pennsylvania, with its principal place of business in the State of New York. National Union does business in the District of Columbia.

5.      Upon information and belief, Counterclaim Defendant Grelle is a citizen of the State of Florida.

**Underlying Facts**

The Underlying Action

6.      At all times relevant, ULLICO, Inc. ("Ullico"), a corporation formed under the laws of the State of Maryland with its principal place of business in the District of Columbia, and Ullico's Subsidiaries, were the "Named Insured" under National Union Policy Nos. 299-96-17 and 495-36-84, and also Insureds under National Union Policy Nos. 874-44-03, 495-38-35 and 548-03-72.

7.      In or about March 2002 the United States Department of Labor ("DOL") began investigation of Ullico and by June 2002 it had issued numerous subpoenas to Ullico and other Ullico-related entities.

8.    The DOL subpoenas arose from or were related to alleged improprieties of Ullico's senior management enriching themselves by tens of millions of dollars through the Ullico Stock Repurchase Program.    The alleged improprieties of unjust enrichment were effectuated by amendments to the Ullico Stock Repurchase Plan.  The DOL began investigating whether Ullico and Ullico Pension Plan & Trust engaged in transactions in violation of ERISA.

9.    On July 18, 2003, Joseph A. Carabillo ("Carabillo") filed Civil Action No. 1:03CV01556 in the United States District Court for the District of Columbia, asserting claims against Ullico for ERISA violations, breach of contract, and wrongful termination, and seeking compensatory and punitive damages, and other relief.

10.    Ullico and four related parties responded by filing an Answer and Counterclaim on October 17, 2003 (amended on November 3, 2003), asserting claims against Carabillo, Grelle and others for breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties, and unjust enrichment (the "Carabillo I Counterclaim").  *Complaint*, Ex. 1.

11.    The Carabillo I Counterclaim was evaluated for coverage by National Union under the Directors and Officers Policies (Policy Nos. 299-96-17 and 495-36-84 Run-Off).

12.    In its coverage determination letter dated April 30, 2004, National Union advised that no coverage was available under Directors and Officers Policy No. 299-96-17 because the claims asserted against Grelle were precluded from coverage pursuant to the "insured v. insured" exclusion, and because the policy contains a Prior Act Exclusion which excludes coverage for Wrongful Acts that occurred prior to the inception date of the policy period (July 19, 2003). Since the alleged Wrongful Acts committed by Grelle occurred during his employment at Ullico, which ended on February 25, 2003, National Union advised that such Prior Acts Exclusion precluded coverage.

13.    In addition, the April 30, 2004 letter advised Grelle that no coverage was available under Directors and Officers Policy No. 495-36-84 (Run-Off) because the claims asserted against Grelle were precluded from coverage pursuant to the "insured v. insured" exclusion.

14.    The April 30, 2004 letter also advised Grelle that certain other provisions of the Directors and Officers Policies might limit or exclude coverage.

15.    The Carabillo I Counterclaim was also evaluated for coverage by National Union under the 2003 and 2001 Fiduciary Policies.

16.    In a coverage determination letter dated October 29, 2004, National Union advised that there was no coverage under either Fiduciary Policy. However, this coverage position was revised in a letter dated December 14, 2004, in which National Union advised that there was no coverage for the Carabillo I Counterclaim under the 2003 Fiduciary Policy based on the policy's Endorsement #12, which precludes coverage for claims that allege, arise out of, are based upon, attributable to or in any way related directly or indirectly to the DOL Investigation.

17.    The December 14, 2004 letter (referring to the October 29, 2004 letter) further advised Grelle that the Carabillo I Counterclaim was related to the DOL Investigation concerning the stock repurchase transactions in which Grelle and the other individual defendants were involved.  Accordingly, under a full reservation of rights, National Union accepted the Carabillo I Counterclaim under the 2001 Fiduciary Policy because of its relatedness to the DOL Investigation and pursuant to a provision in such policy under which subsequent claims are deemed reported in the same policy period if they were related claims.  National Union agreed to pay defense costs incurred by Grelle for the Carabillo I Counterclaim subject to a 50% allocation

upon its determination that two of the four counts against Grelle were covered under the 2001 Fiduciary Policy.

18.     On May 13, 2004, Carabillo filed Civil Action 1:04CV00776 (RJL) in the United States District Court for the District of Columbia, asserting various claims against Ullico-related entities, alleging ERISA violations.

19.     On July 26, 2004, Ullico, Inc. and various Ullico-related entities filed an Answer and Counterclaim against Carabillo, Grelle and others alleging various breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties and other claims (the "Carabillo II Counterclaim").

20.     The Carabillo II Counterclaim was evaluated for coverage under the 2003 and 2001 Fiduciary Policies.

21.     In its coverage determination letter dated November 29, 2004, National Union accepted the Carabillo II Counterclaim under the 2001 Fiduciary Policy because of its relatedness to the DOL Investigation and pursuant to a provision in such policy under which subsequent claims are deemed reported in the same policy period if they were related claims.

22.     The November 29, 2004 letter further advised Grelle that National Union, under a full reservation of rights, agreed to pay the defense costs incurred by Grelle in connection with the defense of the Carabillo II Counterclaim.

**Directors and Officers Policy No. 299-96-17**

23.     National Union Policy No. 299-96-17 is a Directors, Officers and Private Company Liability Insurance Policy that provides insurance coverage to, *inter alia*, Ullico and its Subsidiaries, employees, officers and directors from liability "arising from a claim first made against such insureds during the Policy Period … for any actual or alleged Wrongful Act in their

respective capacities as Directors, Officers or Employees of [Ullico]" for the policy period July 19, 2003 to July 19, 2004 (the "03-04 D&O Policy").

24.    The 03-04 D&O Policy has a $10 million limit of liability for each Claim, and in the aggregate.  This limit of liability includes defense costs incurred in the defense of such claim or claims.

25.    The 03-04 D&O Policy provides for a $750,000 Retention for each "Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts," which requires the Insured to bear the first $750,000 in costs resulting from "Judgments, Settlements and Defense Costs."

26.    The Named Insured under the 03-04 D&O Policy is "ULLICO, INC. AND SUBSIDIARIES."   The 03-04 D&O Policy also provides coverage for "any past, present or future Subsidiary of the Named Entity."

27.    Also included within the definition of "Insured" under the 03-04 D&O Policy are:

    (1)    an Individual Insured; and

    (2)    the Company

28.    The definition of "Individual Insured" under the 03-04 D&O Policy includes, *inter alia*:

> (1)  any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company, but only in their capacities as such.  Coverage will automatically apply to all new directors, officers, management committee members or members of the Board of Managers of the Company after the inception date of this policy; …

29.    The definition of "Company" under the 03-04 D&O Policy includes "the Named Entity and any Subsidiary thereof."

30.     Exclusion 4(i) of the 03-04 D&O Policy precludes coverage for a claim asserted by an insured against another insured.

31.     Exclusion 4(o) of the 03-04 D&O Policy precludes coverage for, among other things, any claim alleging the violation of the responsibilities, obligations or duties imposed by ERISA.

32.     Exclusion (a) of the 03-04 D&O Policy precludes coverage for any claim "arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an insured was not legally entitled."

33.     Exclusion (c) of the 03-04 D&O Policy precludes coverage for any claim "arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law."

34.     Exclusion (d) of the 03-04 D&O Policy precludes coverage for any claim "alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time."

35.     Exclusion (e) of the 03-04 D&O Policy precludes coverage for any claim alleging, arising out of, based upon or attributable to any pending or prior administrative or regulatory proceeding or investigation of which an Insured had notice, or alleging any Wrongful Act which is the same or Related Wrongful Act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.

**Directors and Officers Policy No. 495-36-84**

36.     National Union Policy No. 495-36-84 is a Directors, Officers and Private Company Liability Insurance Policy that provides insurance coverage to, *inter alia*, Ullico and its Subsidiaries, employees, officers and directors from liability "arising from a claim first made against such insureds during the Policy Period … for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers or Employees of [Ullico]" for the policy period October 30, 2002 to October 30, 2003 (the "02-03 D&O Policy").

37.     In all respects relevant to this Counterclaim, the 02-03 D&O Policy is substantively identical to the 03-04 D&O Policy.

**The 2001 Fiduciary Policy**

38.     National Union Policy No. 874-44-03 is an Employee Benefit Plan Fiduciary Liability Insurance Policy that provides insurance coverage to Ullico and its Subsidiaries and Plans for losses arising from a claim for a wrongful act for the policy period October 30, 2001 to October 30, 2002 (the "2001 Fiduciary Policy").

39.     The 2001 Fiduciary Policy has a $5 million limit of liability for all Loss, in the aggregate, including defense costs. The 2001 Fiduciary Policy further provides for a Retention of $15,000, which requires the Insured to bear the first $15,000 in costs for a "Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts."

40.     The 2001 Fiduciary Policy, subject to its terms, conditions, limitations, exclusions and endorsements, provides coverage for the Loss of Insureds first made against Insureds during the 2001 Fiduciary Policy Period or the Discovery Period (if applicable) and reported to National Union pursuant to the terms of the 2001 Fiduciary Policy for any actual or alleged Wrongful Act by Insureds (or by any employee for whom an Insured is legally responsible).

41.    Section 8(b) of the 2001 Fiduciary Policy provides that when notice of a claim has been given by an Insured to the Insurer in accordance with the terms of the 2001 Fiduciary Policy, then any claim which is subsequently made against an Insured arising out of, based upon or attributable to the facts alleged in the claim for which notice has been given shall be considered made at the time such notice has been given.

42.    Section 9 of the 2001 Fiduciary Policy also requires that the Insured shall select a defense firm from the list of panel counsel firms attached to the Policy as Appendix A to conduct the defense of a claim involving, among other things, a fact-finding investigation by the DOL.

**The 2002 Fiduciary Policy**

43.    National Union Policy No. 495-38-35 is an Employee Benefit Plan Fiduciary Liability Insurance Policy that provides insurance coverage to Ullico and its Subsidiaries and Plans for losses arising from a claim for a wrongful act for the policy period October 30, 2002 to October 30, 2003 (the "2002 Fiduciary Policy").

44.    The 2002 Fiduciary Policy has a $5 million limit of liability for all Loss, in the aggregate, including defense costs.  The 2002 Fiduciary Policy further provides for a Retention of $50,000, which requires the Insured to bear the first $50,000 in costs for a "Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts."

45.    Exclusion 5(d) of the 2002 Fiduciary Policy precludes coverage for claims that arise out of, are attributable to or that are based upon Wrongful Acts alleged or contained in any claim which has been reported under an earlier policy.

**The 2003 Fiduciary Policy**

46.    National Union Policy No. 548-03-72 is an Employee Benefit Plan Fiduciary Liability Insurance Policy that provides insurance coverage to Ullico and its Subsidiaries and

Plans for losses arising from a claim for a wrongful act for the policy period October 30, 2003 to October 30, 2004 (the "2003 Fiduciary Policy").

47.    The 2003 Fiduciary Policy has a $5 million limit of liability for all Loss, in the aggregate, including defense costs.  The 2003 Fiduciary Policy further provides for a Retention of $250,000, which requires the Insured to bear the first $250,000 in costs for a "Loss arising from Claims alleging the same Wrongful Act or related Wrongful Acts."

48.    Exclusion 5(d) of the 2003 Fiduciary Policy precludes coverage for claims that arise out of, are attributable to or that are based upon Wrongful Acts alleged or contained in any claim which has been reported under an earlier policy.

49.    Endorsement #12 to the 2003 Fiduciary Policy explicitly excludes coverage for any Loss in connection with any Claim "alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to a related Breach of Fiduciary Duty or related Wrongful Act alleged" in the DOL subpoenas issued in connection with its investigation involving Ullico, "regardless of whether or not such Claim involved the same or different Insureds, the same or different legal causes of action, or the same or different claimants, or is brought in the same or different venue, or resolved in the same or different forum."

**COUNTERCLAIM I – DECLARATORY JUDGMENT**
**The 02-03 and 03-04 D&O Policies**

50.    National Union incorporates herein by references and makes a part hereof its allegations set forth in paragraphs 1 through 49.

51.    By virtue of bringing his Complaint in this action, Grelle necessarily asserts that he is an Insured under the 02-03 and 03-04 D&O Policies.

52.    Ullico is the Named Insured under the 02-03 and 03-04 D&O Policies.

53.    Because all of the underlying action counterclaims asserted against Grelle, a putative Insured under the policies, are claims "brought by an Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively," the policies' Exclusions (i) operate to exclude coverage for all such counterclaims.

54.    Even if the 02-03 and 03-04 D&O Policies' Exclusions (i) do not operate to exclude coverage for such counterclaims, the policies provide no coverage for the underlying action counterclaims for the additional following reasons:

a)    Because some or all of the underlying action counterclaims asserted against Grelle arise out of his breaches of fiduciary duties, responsibilities and/or obligations in connection with the Ullico retirement/benefit plans, which plans are established solely for the benefit of the employees of Ullico and its Subsidiaries, the 02-03 and 03-04 D&O Policies' Exclusions (o) operate to exclude coverage for some or all of such counterclaims.

b)    Because some or all of the underlying action counterclaims asserted against Grelle arise out of, are based upon or attributable to his "gaining in fact of any profit or advantage to which an Insured was not legally entitled," the 02-03 and 03-04 D&O Policies' Exclusions (a) operate to exclude coverage for some or all of such counterclaims.

c)    Because some or all of the underlying action counterclaims asserted against Grelle arise out of, are based upon or attributable to "the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law," the 02-03 and 03-04 D&O Policies' Exclusions (c) operate to exclude coverage for some or all of such counterclaims.

d)      Because some or all of the underlying action counterclaims asserted against Grelle arise out of, are based upon or attributable to "the same or Related Wrongful Act alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time," the 02-03 and 03-04 D&O Policies' Exclusions (d) operate to exclude coverage for some or all of such counterclaims.

e)      Because some or all of the underlying action counterclaims asserted against Grelle arise out of, are based upon or attributable to a pending or prior "administrative or regulatory proceeding or investigation … or alleging any Wrongful Act which is the same or related Wrongful Act to that alleged in such pending or prior … administrative or regulatory proceeding or investigation," the 02-03 and 03-04 D&O Policies' Exclusions (e) operate to exclude coverage for some or all of such counterclaims.

55.     Despite the applicability of Exclusions (i), (o), (a), (c), (d) and (e), Grelle claims that he is entitled to both a defense and indemnity for the underlying action counterclaims under the 02-03 and 03-04 D&O Policies.

56.     National Union does not owe Grelle a defense or indemnity under the 02-03 or 03-04 D&O Policy for the underlying action counterclaims asserted against him.

57.     There is an actual, justiciable controversy between the parties, ripe for adjudication.

58.     As a result of the status of the parties in the underlying action counterclaims, and in light of the clear and unambiguous language of the 02-03 and 03-04 D&O Policies, National

Union is entitled to a declaration that Counterclaim Defendant Grelle is not entitled to either a defense or indemnity under the policies for the claims made against him in the underlying action counterclaims.

## COUNTERCLAIM II – DECLARATORY JUDGMENT
### 2001 Fiduciary Policy

59.     National Union incorporates herein by reference and makes a part hereof its allegations set forth in paragraphs 1 through 58.

60.     National Union has agreed to pay Grelle's defense costs, subject to its reservation of rights, incurred in connection with the DOL Investigation and related claims covered under the 2001 Fiduciary Policy.

61.     Despite National Union's compliance with the terms of the Policy and its agreement to provide coverage for the covered claims thereunder, Grelle asserts that he is entitled to coverage for claims which are not covered under the 2001 Fiduciary Policy.

62.     National Union is providing Grelle a defense under the 2001 Fiduciary Policy.

63.     National Union does not owe Grelle indemnity under the 2001 Fiduciary Policy for the underlying action counterclaims asserted against him, because there has not yet been a final adjudication, settlement or other resolution of such counterclaims for which to indemnify Grelle.

64.     There is an actual, justiciable controversy between the parties, ripe for adjudication.

65.     As a result of the status of the parties in the underlying action counterclaim, and in light of the clear and unambiguous language of the 2001 Fiduciary Policy, National Union is entitled to a declaration that it has fulfilled its obligations under the policy to provide Counterclaim Defendant Grelle with a defense of the covered claims and that he is not currently

entitled to indemnity under the policy for the claims made against him in the underlying action counterclaims.

## COUNTERCLAIM III – DECLARATORY JUDGMENT
### 2002 Fiduciary Policy

66.     National Union incorporates herein by reference and makes a part hereof its allegations set forth in paragraphs 1 through 65.

67.     The claims asserted against Grelle for which Grelle seeks coverage under the 2002 Fiduciary Policy arise out of, are attributable to and/or are based upon the DOL Investigation and therefore are precluded from coverage pursuant to certain exclusions and other policy provisions including, but not limited to, Exclusion 5(d) of the 2002 Fiduciary Policy, and National Union does not owe Grelle a defense thereunder.

68.     Despite the applicability of Exclusion 5(d) and other policy provisions, Grelle claims that he is entitled to a defense and indemnity under the 2002 Fiduciary Policy.

69.     There is an actual, justiciable controversy between the parties, ripe for adjudication.

70.     In light of the clear and unambiguous language of the 2002 Fiduciary Policy, National Union is entitled to a declaration that Counterclaim Defendant Grelle is not entitled to either a defense or indemnity under such policy for the claims in the underlying action counterclaims asserted against him.

## COUNTERCLAIM IV – DECLARATORY JUDGMENT
### 2003 Fiduciary Policy

71.     National Union incorporates herein by reference and makes a part hereof its allegations set forth in paragraphs 1 through 70.

72.     The 2003 Fiduciary Policy explicitly excludes coverage for any Loss in connection with any Claim "alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to a related Breach of Fiduciary Duty or related Wrongful Act alleged" in the DOL subpoenas issued in connection with its investigation involving Ullico, "regardless of whether or not such Claim involved the same or different Insureds, the same or different legal causes of action, or the same or different claimants, or is brought in the same or different venue, or resolved in the same or different forum."

73.     Despite the applicability of the exclusion contained in Endorsement #12 to the 2003 Fiduciary Policy, Grelle claims that he is entitled to both a defense and indemnity for the underlying action counterclaims under such policy.

74.     National Union does not owe Grelle a defense under the 2003 Fiduciary Policy for the underlying action counterclaims asserted against him.

75.     National Union does not owe Grelle an indemnity under the 2003 Fiduciary Policy for the underlying action counterclaims asserted against him.

76.     There is an actual, justiciable controversy between the parties, ripe for adjudication.

77.     In light of the clear and unambiguous language of the 2003 Fiduciary Policy, National Union is entitled to a declaration that Counterclaim Defendant Grelle is not entitled to either a defense or indemnity under the policy for the claims in the underlying action counterclaims asserted against him.

## PRAYER FOR RELIEF

WHEREFORE, National Union Fire Insurance Company of Pittsburgh, PA prays that the Court grant it the following relief:

a.    an Order declaring that Grelle is not entitled to coverage under Policy No. 299-96-17 for a defense or indemnification in connection with the underlying action counterclaims.

b.    an Order declaring that Grelle is not entitled to coverage under Policy No. 495-36-84 for a defense or indemnification in connection with the underlying action counterclaims.

c.    an Order declaring that Grelle is not entitled to coverage under Policy No. 874-44-03 for any defense other than the defense currently being provided to him by National Union, under a complete reservation of rights, or indemnification in connection with the underlying action counterclaims.

d.    an Order declaring that Grelle is not entitled to coverage under Policy No. 495-38-35 for a defense or indemnification in connection with the underlying action counterclaims.

e.    an Order declaring that Grelle is not entitled to coverage under Policy No. 548-03-72 for a defense or indemnification in connection with the underlying action counterclaims.

f.    an Order that Grelle reimburse National Union for the costs, charges, and expenses associated with defending against Grelle's Complaint;

g.    pre- and post-judgment interest; and

h.    any such other relief as this Court deems appropriate under these facts.

Dated:  June 29, 2007

Respectfully submitted,

**PATTON BOGGS LLP**

By:

_____
/s/

David J. Farber (415899)
Shannon W. Conway (477863)
2550 M Street, N.W.
Washington, D.C.  20037
Telephone:  (202) 457-6000
Facsimile:   (202) 457-6315

*Counsel for Defendant/Counterclaimant*
*National Union Fire Insurance Company of*
*Pittsburgh, PA*